## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NATHAN CARR,

       Plaintiff,                 Case No.

v.                                    Hon.

THE CITY OF MONROE, a
governmental corporation, BARRY
LAROY, in his individual and official
capacities, SPENCER MANIACI, in
his individual and official capacities,
PEGGY HOWARD, in her individual
and official capacities,

       Defendants.

_____

Joseph X. Michaels (P79084)
Adam M. Taub (P78334)
CROSON, TAUB, & MICHAELS, PLLC
Attorneys for Plaintiff
455 E. Eisenhower Pkwy, Suite 75
Ann Arbor, Michigan 48108
(734) 519-0875
jmichaels@ctmlawyers.com
ataub@ctmlawyers.com

_____

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff, Nathan Carr, by and through his attorneys, CROSON, TAUB, & MICHAELS, PLLC hereby brings this action against Defendants and hereby states as follows:

## **INTRODUCTION**

1.     This is a civil-rights case stemming from the unlawful termination of Plaintiff Nathan Carr, a former wastewater operator at the City of Monroe's Wastewater Department. In 2020 and 2021, Plaintiff observed a number of serious health issues at the wastewater treatment plant that could seriously affect the health and safety of the citizens of Monroe and other communities on Lake Erie, including the illegal discharge of raw sewage into the lake. Plaintiff and his girlfriend then began a public campaign to address the issue, including by taking photographs and videos of the violations, notifying management, contacting the State Department of Environment, Great Lakes, and Energy, and providing videos to their union who gave them to the press.

2.     Rather than address the issues, Defendants terminated Plaintiff in retaliation for their efforts to expose the illegal actions the City of Monroe. This termination plainly violated Michigan's Whistleblower Protection Act and the rights guaranteed to public employees under the First Amendment to free speech and to petition their government for a redress of grievances.

3.     Plaintiff thus brings this action to remedy this unconstitutional and illegal retaliation, and to seek all appropriate damages under State and Federal Laws.

4.     In addition, Plaintiff's termination occurred shortly after taking medical leave for a work-related injury pursuant to the Family and Medical Leave Act

("FMLA") and worker's compensation. Plaintiff thus brings claims under the FMLA and Michigan's Worker's Compensation law to remedy retaliation against him for his workplace injuries and use of leave time under the FMLA.

## PARTIES, JURISDICTION, AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as the claims asserted arise out of federal constitutional and statutory law, namely 42 U.S.C. § 1983 and U.S CONST. AMEND. I, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq*.

6.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because all of the events giving rise to this claim took place in this district and Defendants are either governmental entities within the district or individuals who reside in this district.

7.     Supplemental Jurisdiction over Plaintiff's state-law claims are proper under 28 U.S.C. § 1367, as they arise from the same case or controversy.

8.     Plaintiff Nathan Carr is an individual who resides in the County of Monroe.

9.     Defendant the City of Monroe is a government body created by and operated under the laws of the State of Michigan. It exercises governmental control in Monroe County, MI.

10.     Defendant Barry LaRoy is a managerial employee at Defendant the City of Monroe. Upon information and belief, he resides in Monroe County.

11.     Defendant Peggy Howard is a managerial employee at Defendant the City of Monroe. Upon information and belief, she resides in Monroe County.

12.     Defendant Spencer Maniaci is a managerial employee at Defendant the City of Monroe. Upon information and belief, he resides in Monroe County.

## STATEMENT OF FACTS

13.     Plaintiff Nathan Carr is a former employee of Defendant the City of Monroe, who worked in its Wastewater Department.

14.     Beginning in 2020, Plaintiff observed a number of serious health and safety issues at the wastewater treatment plant operated by Defendant the City of Monroe.

15.     First, in September 2020, Plaintiff and his girlfriend, who also worked at the Plant, learned of elevated phosphorus levels in water discharged from the Plant into Lake Erie, which would contribute to algae blooms in Lake Erie.

16.     When such phosphorous levels are high, water treatment plants are supposed to add an additional treatment to the discharged water to neutralize the excess phosphorous levels.

17.    Defendant City of Monroe was attempting to cut costs by not treating the discharged water as often as was needed to get phosphorous to an acceptable level.

18.    Plaintiff's girlfriend informed Defendant Maniaci of the unlawful activity.

19.    Even though Plaintiff's girlfriend informed Defendant Maniaci of the elevated levels, Defendant City of Monroe never informed the State of Michigan Department of Environment, Great Lakes, and Energy ("EGLE") of the elevated discharge, as it was required to do by law.

20.    Defendant City of Monroe was also illegally discharging excess raw sewage into public waters.

21.    In June 2021, Plaintiff took a video of an illegal discharge of raw sewage. Specifically, the Plant had insufficient capacity to handle the incoming waste, and Defendants illegally diverted the excess sewage into River Raisin, which flowed into Lake Erie.

22.    After such a discharge, the Plant was supposed to immediately notify EGLE of the illegal discharge, which would result in a fine, but Defendant City of Monroe did not give such notification.

23.    Plaintiff was aghast at the illegal discharge, which could severely damage the health of the people of Monroe and the environment in Lake Erie and elsewhere.

24.    In order to remedy the situation, Plaintiff gave these videos to his girlfriend, who was a lab supervisor at the Plant. She immediately forwarded the video to EGLE on his behalf.

25.    The next month in July 2021, Defendant Maniaci told Plaintiff that he was not to take any further videos of the operations of the Plant.

26.    In August 2021, Plaintiff injured his left shoulder on the job, while using a shovel and wheelbarrow to clear waste from a "bar screen" while its collection apparatus was down.

27.    Initially, Plaintiff was placed on a one-arm work restriction and continued to work for the Plant.

28.    In September 2021, Plaintiff observed an incident in which raw sewage spilled out of a dump truck and onto the road, as pictured below.



29.     This was also an illegal discharge of untreated materials, and Defendant City of Monroe again failed to report the incident to EGLE.

30.     In October 2021, Plaintiff learned of additional serious health issues at the facility. On or about October 15, Plaintiff was doing rounds and observed that the "UV channel", which uses ultraviolet light to kill pathogens, was colored black, when it supposed to be green.

31.     Plaintiff took pictures and videos of this, and informed his supervisor, who had Plaintiff close a gate to the tank. This action lowered the flow of the UV channel. However, a broken valve caused raw sewage to be pumped into the wrong tank, which caused an overflow of sewage into a tank that was  supposed to be for clean water.

32.     Plaintiff immediately informed his girlfriend and his union representative, who came down to witness the incident.

33.     Defendant LaRoy arrived on the scene and took no action.

34.     Plaintiff told LaRoy about the situation, that he believed the situation was illegal, and that he had pictures of the event.

35.     Plaintiff submitted a formal work order but was told the issue would have to wait until Monday.

36.     In part because this issue was unresolved, for the next several days, there was a high flow to the facility, and untreated sewage would be discharged directly into waters flowing into Lake Erie, as picture below.



37.     Defendant City of Monroe was also required by law to report such discharges to EGLE but failed to do so.

38.     Plaintiff took a number of videos on his cell phone, to document the clear violation of health and safety regulations.

39.     Plaintiff provided those videos to his girlfriend.

40.     Plaintiff and his girlfriend hoped to expose the illegal activities and hoped to spur governmental action to ensure the health and safety of the Citizens of Monroe and Lake Erie.

41.     Around this time, in October and November 2021, Plaintiff and his girlfriend went to the Michigan Water Environment Association ("MWEA") to take a class and a test for their wastewater certification.

42.     As part of the class, Plaintiff and his girlfriend learned the laws and regulations regarding discharges.

43.     Plaintiff and his girlfriend stayed later after class and informed the MWEA personnel about what was occurring at the Plant. The MWEA personnel told Plaintiff and his girlfriend to contact EGLE.

44.     After this meeting, on his behalf, and with Plaintiff's full knowledge and support, Plaintiff's girlfriend contacted EGLE.

45.     Plaintiff and his girlfriend also gave the videos which were made by Plaintiff to his union, who eventually gave them to the media, including TV stations.

46.     Plaintiff and his girlfriend hoped to expose Defendant City of Monroe's illegal conduct to the public and regulatory bodies.

47.     Also, around this time, while Plaintiff was still on work restrictions, he submitted a leave request for a surgery to repair his left shoulder. On or about October 28, 2021, Plaintiff submitted a medical certification for the surgery, which was scheduled for December 6, 2021.

48.     Plaintiff was thereafter approved for leave under the Family and Medical Leave Act and City Policy for a leave beginning on December 6, 2021.

49.     While Plaintiff was still on medical leave, on January 12, 2022, Defendants  LaRoy, Howard, and Maniaci, as agents of  Defendant City of Monroe terminated Plaintiff.

50.     The stated basis for Defendants' termination of Plaintiff was that he had not passed the "Wastewater D" Certification Exam.

51.     However, numerous other employees had failed this certification and remained employed in other capacities that did not require the certification.

52.     The real motivation for Plaintiff's termination was retaliation for his exercise of his constitutionally protected speech, and his whistleblowing activity, his use of FMLA leave, and his workers compensation claim.

53.     Any other reason is merely pretextual.

## CAUSES OF ACTION

### COUNT I
### FIRST AMENDMENT RETALIATION
### 42 U.S.C. § 1983:  U.S. CONST. AMEND. I
### *(Against all Defendants)*

54.     Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

55.     The Defendants are all "persons" covered by the meaning of 42 U.S.C. § 1983.

56.     At all relevant times, Individual Defendants acted under color of state law by virtue of the performance of their duties as employees of Defendant the City of Monroe, which is created by and operated under the laws of the State of Michigan.

57.     Plaintiff engaged in protected activity under the First Amendment of the United States Constitution as described herein, by speaking freely on matters of public concern and petitioning his government for a redress of grievances.

58.     The Individual Defendants' actions against Plaintiff were motivated in significant part by Plaintiff's constitutionally protected speech and actions.

59.     Plaintiff suffered an objectively adverse employment action when he was terminated.

60.     But for Plaintiff's exercise of his constitutionally protected rights, he would not have been terminated.

61.     Individual Defendants violated Plaintiff's clearly established constitutional right to be free of retaliation under the First Amendment to the U.S. Constitution and are not entitled to qualified immunity.

62.     These actions were undertaken via a policy, practice, or procedure of Defendant the City of Monroe.

63.     As a result of Defendants' unlawful conduct, Plaintiff was harmed, and continues to be harmed, in that he has suffered economic and non-economic loss, including but not limited to, lost wages, damage to professional reputation, emotional distress, outrage and humiliation.

64.     The Individual Defendants' actions were done with reckless disregard to Plaintiff's federally protected rights, entitling him to punitive damages.

65.     Plaintiff also seeks an injunction against the Individual Defendants in their official capacity reinstating Plaintiff to his position and preventing any further unconstitutional actions under *Ex Parte Young*, 209 U.S. 123 (1908).

## COUNT II
## FREEDOM OF SPEECH
### MICH. CONST. OF 1963, ART. I, SEC. 5
*(Against Defendant the City of Monroe)*

66.     Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

67.     Defendant the City of Monroe is a Michigan Governmental entity, subject to the dictates of the Michigan Constitution.

68.     Plaintiff engaged in protected activity under the Free Speech Clause of the Michigan Constitution as set forth above.

69.     Plaintiff suffered an objectively adverse employment action when he was terminated by the City of Monroe.

70.     But for Plaintiff's exercise of his constitutionally protected right to free speech, he would not have been terminated.

71.     Defendant the City of Monroe actions against Plaintiff were motivated in significant part by Plaintiff's constitutionally protected speech.

72.     As a result of Defendant City of Monroe's unlawful conduct, Plaintiff was harmed, and continues to be harmed, in that he has suffered economic and non-economic loss, including but not limited to, lost wages, damage to professional reputation, emotional distress, outrage and humiliation.

## COUNT III
## WHISTLEBLOWER PROTECTION ACT
## MCL § 15.361, *et seq.*
### *(Against Defendant the City of Monroe)*

73.     Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

74.     At all relevant times, Plaintiff was an employee, and Defendant the City of Monroe was an employer covered by and within the meaning of the Whistleblower's Protection Act ("WPA"), MCL § 15.361.

75.     The City of Monroe and EGLE are public bodies as defined by the Whistleblower's Protection Act ("WPA"), MCL § 15.361(d).

76.     Plaintiff reasonably believed that Defendant City of Monroe was in violation or suspected violation of laws related to wastewater treatment.

77.     Plaintiff engaged in protected activity under MCL § 15.362 when he informed Plant management, including Defendant LaRoy, of the illegal activities at the Plant.

78.     Plaintiff  also engaged in protected activity under MCL § 15.362 when his girlfriend, on his behalf, reported Defendant City of Monroe's above-described conduct to EGLE, which he reasonably believed violated the law.

79.     Defendant retaliated against Plaintiff because of his protected activity in violation of the WPA by, *inter alia*, terminating his employment.

80.     Defendant City of Monroe's decision to terminate Plaintiff was motivated by Plaintiff's above-described protected activity.

81.     But for Plaintiff's protected activity Defendant City of Monroe would not have terminated Plaintiff's employment.

82.     As a direct and proximate result of Defendant's violation of the WPA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

83.     As a further direct and proximate result of Defendant's violation of the WPA, Plaintiff has been placed in financial distress and has suffered a loss of

14

earnings and benefits, and a loss of and impairment of his earning capacity and ability to work and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT IV
## FAMILY AND MEDICAL LEAVE ACT INTERFERENCE
## 29 U.S.C. § 2615 (a)(1)
*(Against Defendant the City of Monroe)*

84.     Plaintiff herein reincorporates its allegations in the paragraphs above.

85.     At all relevant times, Defendant was a public employer and employed greater than 50 employees within a 75-mile radius of Plaintiff's worksite and was therefore a covered employer subject to the requirements of the FMLA.

86.     At the time relevant to this suit, Plaintiff was an employee of Defendant and had worked more than 1,250 hours in the preceding twelve months and therefore was entitled for leave under the FMLA.

87.     Plaintiff's leave was FMLA qualified as it was for serious health condition. 29 U.S.C. § 2612(a)(1)(A).

88.     Plaintiff gave Defendant appropriate notice of his serious health condition.

89.     Defendant interfered with Plaintiff's federally-protected right to FMLA leave by among other things, terminating him, thus interfering with his right to be reinstated to a position upon conclusion of his leave.

90.     This course of conduct was a willful violation of the FMLA, entitling Plaintiff to liquidated damages.

91.     As a result of Defendant's unlawful conduct, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to, lost wages, damage to professional reputation, emotional distress, outrage and humiliation.

## COUNT V
## FAMILY AND MEDICAL LEAVE ACT RETALIATION
## 29 U.S.C. § 2615 (a)(2)
### *(Against Defendant the City of Monroe)*

92.     Plaintiff herein reincorporates its allegations in the paragraphs above.

93.     At all relevant times, Defendant was a public employer and employed greater than 50 employees within a 75-mile radius of Plaintiff's worksite and was therefore a covered employer subject to the requirements of the FMLA.

94.     At the time relevant to this suit, Plaintiff was an employee of Defendant and had worked more than 1,250 hours in the preceding twelve months (12) and therefore was entitled for leave under the FMLA.

95.     Plaintiff's leave was FMLA qualified. 29 U.S.C. § 2612(a)(1)(A).

96.    Plaintiff gave Defendant appropriate notice and made appropriate requests for leave under the FMLA.

97.    Defendant retaliated against Plaintiff's due to his exercise of his federally-protected right to FMLA leave by among other things, terminating him.

98.    Defendant's decision to terminate Plaintiff's employment was motived by Plaintiff's protected activity under the FMLA.

99.    But for Plaintiff's protected activity under the FMLA, Defendant would not have terminated Plaintiff's employment.

100.   This course of conduct was a willful violation of the FMLA, entitling Plaintiff to liquidated damages.

101.   As a result of Defendant's unlawful conduct, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to, lost wages, damage to professional reputation, emotional distress, outrage and humiliation.

## COUNT VI
## WORKERS COMPENSATION RETALIATION
## MCL 418.301(13)
### (*Against All Defendants*)

102.   Plaintiff herein reincorporates its allegations in the paragraphs above.

103.   Michigan's Worker's Disability Compensation Act provides "A person shall not discharge an employee or in any manner discriminate against an employee

because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act." MCL 418.301(13).

104.   Plaintiff filed a proper claim under the Worker's Compensation Act in December 2021.

105.   Defendants terminated Plaintiff as a result of this claim, in violation of MCL 418.301(13).

106.   Defendants' decision to terminate Plaintiff was motivated by Plaintiff's protected activity under the Worker's Compensation Act.

107.   But for Plaintiff's protected activity, Defendants would not have terminated Plaintiff's employment.

108.   As a result of Defendants' unlawful conduct, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to, lost wages damage to professional reputation, emotional distress, outrage and humiliation.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Roger Nathan Carr requests that this Honorable Court grant the following remedies:

a.   Compensatory damages for monetary and nonmonetary loss in whatever amount he is found to be entitled;

b.      Exemplary and punitive damages in whatever amount he is found to be entitled;

c.      A judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled;

d.      An order of this Court reinstating Plaintiff to the positions he would have if there had been no wrongdoing by Defendants;

e.      An injunction of this Court prohibiting any further unconstitutional or illegal acts by Defendants;

f.      An award of interest, costs and reasonable attorney fees; and

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants and all relief requested in this Complaint.

Respectfully submitted,
CROSON, TAUB, & MICHAELS, PLLC

*/s/ Joseph X. Michaels*
Joseph X. Michaels (P79084)
CROSON, TAUB, & MICHAELS, PLLC
455 E. Eisenhower Pkwy, Suite 75
Ann Arbor, Michigan 48108
(734) 519-0875
jmichaels@ctmlawyers.com

Dated: April 12, 2022          *Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

NATHAN CARR,

       Plaintiff,                          Case No.

v.                                         Hon.

THE CITY OF MONROE, a
governmental corporation, BARRY
LAROY, in his individual and official
capacities, SPENCER MANIACI, in
his individual and official capacities,
PEGGY HOWARD, in her individual
and official capacities,

       Defendants.

_____

  Joseph X. Michaels (P79084)
  Adam M. Taub (P78334)
  CROSON, TAUB, & MICHAELS, PLLC
  Attorneys for Plaintiff
  455 E. Eisenhower Pkwy, Suite 75
  Ann Arbor, Michigan 48108
  (734) 519-0875
  jmichaels@ctmlawyers.com
  ataub@ctmlawyers.com

_____

## DEMAND FOR JURY TRIAL

Plaintiff NATHAN CARR, by and through his attorneys, hereby demands a trial by jury on all claims pled herein.

20

Respectfully submitted,
CROSON, TAUB, & MICHAELS, PLLC

*/s/ Joseph X. Michaels*
Joseph X. Michaels (P79084)
CROSON, TAUB, & MICHAELS, PLLC
455 E. Eisenhower Pkwy, Suite 75
Ann Arbor, Michigan 48108
(734) 519-0875
jmichaels@ctmlawyers.com

Dated: April 12, 2022                    *Attorney for Plaintiff*